FILED
CHARLOTTE, NC
MAR - 4 2020
US DISTRICT COURT
WESTERN DISTRICT OF NC

Hand-Delivered

IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF NORTH CAROLINA

Case Number: 5:20-cv 29

Patricia Richard,
    Plaintiff
        Versus
Elizabeth Tallant,
    Defendant

## ANSWER TO PLAINTIFF'S SUMMONS and COMPLAINT, DEFENSES, COUNTERCLAIM, and MOTION FOR RELIEF

### ANSWER AND DEFENSES

Now here comes the Defendant, pro se, and hereby submits this Answer and Defenses to the Plaintiff's Summons and Complaint, filed in Iredell County (20CVD225), and moved to the United States District Court of the Western Division of North Carolina.

1. Denied in that the Plaintiff's address last known to the Defendant is in Catawba County, NC at 2337 Welding Shop Road, Vale, NC 28677. The Plaintiff has owned this property since 1976.

2. The Defendant resides in Cleveland County, NC. The Defendant is a victim of violent crime and domestic violence, and a participant in the North Carolina Attorney General's Address Confidentiality Program, governed by NCGS Chapter 15C. The Defendant's mail goes to the Attorney General, who then forwards it to the Defendant. Therefore, the Defendant's mailing address is in Wake County. Per NCGS Chapter 15C and Rule 6, the Defendant has an additional five days to respondend to legal matters because of the time required to forward the mail.

3. The issue is a dispute over an agreement. It is improper to bring an action for cancellation of a deed of trust because the dispute over the agreement has not been resolved.

4. Admitted.

5. Denied. The filed Deed of Trust states on the first page, next to last sentence, *"WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of Sixty Thousand and NO/10----Dollars ($60,000) as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference."* (See Defendant's Exhibit A).

6. Denied. The amortization schedule is attached hereto (See Defendant's Exhibit B), and is for a loan of sixty-thousand dollars ($60,000), payments of five hundred dollars ($500) cash per month beginning in February 2018 through April 2030, and an annual interest rate of three and one half

1

percent (3.5%)

7. Denied. The Deed of Trust states that it is to be paid **in cash** to the Defendant, with interest. The Deed of Trust states on page 2, paragraph 3, "If the Grantor shall pay the note hereby in accordance with its terms, together with **interest** thereon, ...." (See Exhibit A).

The payment terms are for monthly payments of five hundred dollars ($500) cash per month beginning in February 2018 through April 2030. The annual interest rate is for three and one half percent (3.5%). (See Exhibit B)

8. The Plaintiff's allegation is scandalous, defamatory, and cruel. The Defendant has two children, and the younger child is disabled. The Defendant is the younger child's full time caregiver.

9. The Plaintiff and the Defendant agreed that the Plaintiff would pay the Defendant cash money as payment on the debt, as stated in the Deed of Trust/Promissory Note/Amortization Schedule. The remainder is Denied, and the aformentioned documents says that payments are to be made in cash, and make no allowance for barter. The documents say that cash is to be paid to the Defendant, not to other parties. The Plaintiff's allegation is shocking. The Plaintiff has never had any authority whatsoever to conduct any business whatsoever in the Defendant's name nor on the Defendant's behalf, nor to obtain the Defendant's financial information. There is no agreement for the Plaintiff to pay the Defendant's bills, or to exchange good and services from other parties for credit on the Deed of Trust/Promissory Note. No barter agreement has ever existed.

10. Denied. The Deed of Trust/Promissory Note says that payments are to be made in cash to the Defendant. There is no provision for barter, or for the payments to be made to other parties. The Plaintiff's allegation is shocking. The Plaintiff has never had any authority whatsoever to conduct any business whatsoever in the Defendant's name nor on the Defendant's behalf, nor to obtain the Defendant's financial information. The Plantiff has no legal authority to determine what is "for the benefit of the Defendant." The Plaintiff has paid nothing on the Deed of Trust.

11. Denied. The Plaintiff is in default and has paid nothing on the Deed of Trust. The Defendant received a letter dated November 6, 2019 falsely purpoprting that the Plaintiff had paid all monies owed on the Deed of Trust except for $15,000, and also making other false claims. The Defendant called the Trustee to request the purported payments, only to learn that no payments had been made. The Trustee informed the Defendant that the Plaintiff was falsely purporting that she and the Defendant had a barter agreement, and demanding that goods and services she had purchased from other parties be used as barter against the Deed of Trust.

12. Denied. The Defendant never received a letter dated November 25, 2019.

13. Denied in that the Defendant never received any such request, and that the Plaintiff has paid nothing on the Deed of Trust and never finished making the down payment.

14. and 15. Admitted.

16., 1., and 2. All Denied. The Plaintiff has paid the Defendant nothing on the Deed of Trust, did not make the entire down payment on the purchase, and is not entitled to anything.

## DEFENDANT'S COUNTERCLAIM, DEFENSES, and MOTION FOR RELIEF

Now here comes the Defendant, pro se, and pursuant to 28 USC 1446, 28 USC 1367, 26 USC 7206, the United States Internal Revenue Laws referenced herein, and other United States Laws referenced herein, hereby petitions this Honorable Court to Order the Plaintiff to stop conducting business in the Defendant's name and under the guise that she is acting on the Defendant's behalf; to order an investigation of the transactions, agreements, etc. the Plaintiff has made in the Defendant's name and while claiming to act on the Defendant's behalf; to dismiss the Plaintiff's Summons and Complaint; to make determinations of all Federal taxes owed and to compel the release of all tax documents; to strike the deed conveying the Defendant's former home to the Plaintiff and Order that ownership of the subject property be returned to the Defendant; and that the Plaintiff compensate the Defendant for damages, and in support shows the following:

1. The Defendant hereby asserts and incorporates all claims stated in her "NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT of WESTERN NORTH CAROLINA".

2. In December 2017, the Defendant and the Plaintiff made an agreement for the Plaintiff to purchase the Defendant's former home. The agreement was made in Cleveland County, NC.

3. The agreement was for a purchase price of eighty-five thousand dollars ($85,000), a down payment of twenty-five thousand dollars ($25,000) in cash, and the remainder paid with a sixty-thousand dollar ($60,000) Deed of Trust/Promissory Note with monthly payments of five hundred dollars ($500) cash, including interest at an annual rate of three and one half percent (3.5%). The agreement was for all payments to be made in cash to the Defendant. (See "Defendant's Exhibit C", "Deed", with a revenue stamp of one hundred seventy dollars ($170) relfecting a purchase price of eighty-five thousand dollars ($85,000)).

4. Attorney Alan Carpenter conducted the sale, prepared the Deed of Trust, Promissory Note, and Amortization Schedule. He is the Trustee for the Deed of Trust. Alan Carpenter first represented the Defendant in the purchase of a home in 2000. A few year later, the Plaintiff became his client. The Defendant and the Plaintiff are relatives.

5. Alan Carpenter sent the deed to the Defendant to be signed, and the Defendant signed it in Cleveland County and mailed it back to Alan Carpenter, who was to collect the down payment and file the Deed of Trust; but something else happened instead. The Plaintiff went to Alan Carpenter's office and told him that she had paid the twenty-five thousand dollars ($25,000) down payment directly to the Defendant, when in fact she had not paid the Defendant at all. Alan Carpenter took the Plaintiff's word and gave her the signed deed without verifying that she paid the Defendant. Further, Alan Carpenter did not file the Deed of Trust. Upon information and belief, the Plaintiff told Alan Carpenter that she would file the Deed of Trust, and he took her word that she would. The Defendant later learned that the Deed of Trust had not been filed, and she immediately filed it.

6. The Plaintiff paid the Defendant less than seven thousand dollars ($7,000) on the down payment, and paid nothing on the Deed of Trust; therefore, the Defendant refused to give the home's keys and security code to the Plaintiff, and repeatedly asked the Plaintiff to either pay her or deed the house back to her. The Plaintiff repeatedly told the Defendant that she would deed the

3

house back to the Defendant, but never did so.

7. The Plaintiff did agree, and signed an agreement, that she would not occupy the home, nor enter it unless the Defendant was present; that she would allow the Defendant to store personal items in the home, and allow the Defendant full access to the home; until such time as the down payment was fully paid and the Deed of Trust payments were current, or for the next eighteen months, whichever was later. The Plaintiff agreed to be responsible for the home's upkeep and maintenance. The Defendant did not bring legal action because the matter involves family, and was hopeful that the matter would be resolved without litigation.

8. The Plaintiff is the Defendant's birth mother. The Plaintiff is seventy-seven (77) years old. The Defendant is fifty-two (52) years old.

9. The Plaintiff is a professional real estate investor and landlord, and a former real estate agent. She has holdings valued at around seven million dollars ($7,000,000) in Catawba, Iredell, Lincoln, Rowan, and Alexander Counties.

10. The Plaintiff has a history of making unreasonable and unjustified demands upon the Defendant for money to finanace the Plaintiff's real estate purchases, and for free labor and other services for the Plaintiff's rental business.

11. The Plaintiff and the Defendant's father were previously married. They separated in 1981 and had a bitter divorce. Both of them remarried. The Plaintiff divorced again, but the Defendant's father stayed married to his second wife until his passing in 2012. The Plaintiff had an extremely acrimonious relationship with the Defendant's father and Defendant's father's family.

12. In May 2018, the Defendant's paternal aunt (Mrs. Peggy Tallant Hare) passed away at the age of 89. A dispute arose between the Plaintiff and members of the Defendant's father's family over monies the Plaintiff owes to Mrs. Hare's estate. Prior to Ms. Hare's pasing, the Plaintiff and Defendant's sibling (Richard Tallant) purchased Mrs. Hare's home for less than half its value with a seventy thousand dollar ($70,000) deed of trust still owed at the time of Ms. Hare's passing. Alan Carpenter prepared the Deed and Deed of Trust. The Plaintiff and Richard Tallant stated that they refused to pay the monies they owed Mrs. Hare's estate.

13. The Defendant also learned that the Plaintiff had falsely purported to members of the Defendant's father's family that she was acting on the Defendant's behalf and had the Defendant's authorization to obtain certain properties for which the Defendant has the right of first refusal. The Defendant never gave consent. Alan Carpenter prepared the deed conveying the properties from the family members to the Plaintiff.

14. The Defendant and Defendant's father's family members disputed the Plaintiff and Richard Tallant's misrepresentations and refusal to pay debts they owe to Mrs. Hare's estate. The Plaintiff and Richard Tallant made threats to the harm the Defendant and family members.

15. The Plaintiff and Richard Tallant then committed civil conspiracy against the Defendant by defaulting on debts owed to her and to Mrs. Hare's estate, by using unlawful tactics to "tie up" all the Defendant's assets, and by bringing litigation against the Defendant (Catawba County 19 SP

216). They committed civil conspiracy against the Defendant to deprive her of funds so that she cannot afford an attorney, and to attempt to coerce her into signing her properties over to them without compensation.

16. The Deed of Trust states that the Trustee initiates foreclosure action. The Defendent asked Alan Carpenter to initiate foreclosure on the subject home. Alan Carpenter stated that he was in a conflict of interest position, and because other deeds he prepared for the Plaintiff were being litigated, he could no longer represent either the Defendant or the Plaintiff.

17. The Plaintiff failed to maintain the subject home's 1.63 acre yard, and allowed the yard to become so overgrown in kudzu that it has grown up on the home's roof and porch, and overtaken a car parked in the yard. The Plaintiff did not maintain the home's exterior well, and the pipes burst in the winter of 2018, leaving the home without water. The damages caused by the Plaintiff's negligence are in the many thousands of dollars and have a substantial impact on the home's value.

18. The Defendant never provided the Plaintiff with a key nor security code.

19. The Defendant has paid all the home's electric bills and security monitoring fees since the sale in January 2018, and the utilities are still in the Defendant's name. The Plaintiff has not paid for any of the home's utilities.

20. The Defendant and Defendant's children left personal possessions inside the home and storage buildings, but have not retrieved said items because of the barriers created by the kudzu, and also because of concerns of confrontation with the Plaintiff if they were to go on the property. Upon information and belief, said items are still in the home.

21. The Plaintiff falsely puports that she paid the Defendant twenty-five thousand dollars ($25,000) for the down payment, and falsely purports she has paid forty-seven thousand, four hundred fifty-four dollars and seventy-two cents ($47,454.72) on the Deed of Trust/Promissory Note. The Plaintiff never made these payments and the Defendant has never received them.
    A. Monies received from the sale of a home are taxable pursuant to 26 CFR 1.121.
    B. Installment sale income is taxable purusuant to 26 CFR 15a.453-1.
    C. An investor's taxable basis for a home is governed by 26 CFR 1.1012-1.

22. The Plaintiff falsely purports that the Defendant gave her an interest free loan for the home's purchase. The Defendant did not give the Plaintiff an interest free loan, and the terms of the loan are for interest to be paid at the annual rate of three and one half percent (3.5%).
    A. Interest free loans are taxable pursuant to 26 USC 7872.
    B. If an interest free loan had been given, the Plaintiff would be required to provide the Defendant with a statement of her annual net investment income, as required by 26 USC 7872(d)(1). The Plaintiff has failed to provide the Defendant with said statement.

23. The Plaintiff falsely purports that she and the Defendant had a barter agreement to exchange goods and services the Plaintiff purchased from other parties in exchange for credit toward the debt owed to the Defendant, and that she has paid over sixty-five thousand dollars ($65,000) in barter. No barter agreement ever existed. The Plaintiff's claims of barter are fraudulent, and the Plaintiff has not provided the Defendant with documentation for the purported barter transactions.

5

Numerous tax codes govern barter, with different requirements for businesses and individuals, but codes are clear that all barter is taxable. IRS publication 525 states on page 20, *"Bartering is an exchange of property or services. You must include in your income, at the time received, the FMV of property or services you received in bartering."*

24. The Defendant has no knowledge of the majority of the purported barter transactions that the Plaintiff claims to have made. The Plaintiff has another action against the Defendant, Catawba County 19 SP 216, in which she is seeking attorney fees and real estate taxes from the Defendant. The Defendant learned that the Plaintiff is claiming that some of the purported barter transactions are the same monies the Plaintiff is suing the Defendant for in 19 SP 216, thereby "double charging" in two different actions.

## Concluding Statements

25. The deed conveyance to the Plaintiff was not lawful nor proper since the attorney/trustee released the signed deed to the Plaintiff without collecting the down payment, and the down payment was never made. The Plaintiff has had over two (2) years to cure this matter, but has refused, and instead has made false claims about payments to the Defendant. The deed is defective.

26. The Deed of Trust, Promissory Note, and Amortization Schedule make clear that all payments for the subject property were to be in cash paid to the Defendant, and that the Plaintiff agreed to pay interest on the loan. No other agreement ever existed.

27. In the Complaint, the Plaintiff and her counsel have made false claims about taxable income.

28. In the Complaint, the Plaintiff admits that she has conducted business in the Defendant's name and while purporting that she was acting on the Defendant's behalf – over sixty-five thousand dollars ($65,000) worth of business the Defendant does not know about. The Plaintiff has no authorization to conduct any business in the Defendant's name nor on the Defendant's behalf, nor to obtain the Defendant's financial information. The Plaintiffs actions are unlawful.

29. The Defendant has the need, and the lawful right, to know what agreements and transactions the Plaintiff has conducted in her name and while purporting to act on her behalf.

30. The Defendant reserves the right to amend this Answer and Counterclaim.

31. The Defendant has recently learned about the Court's Mediation Program for Pro Se Litigants, and will be learning more about the Program in the coming weeks. The Defendant reserves the right to request participation in said Program.

WHEREFORE, the Defendant petitions this Honorable Court for the following:

1. To Order the Plaintiff to immediately cease from conducting business in the Defendant's name, and cease from conducting business under the guise that she is acting on the Defendant's behalf.

2. To Order an investigation to find out all transactions, agreements, etc. that the Plaintiff has conducted in the Defendant's name, and while purporting to act on the Defendant's behalf.

3. To declare as null and void all agreements that the Plaintiff has made in the Defendant's name, and while purpoprting to be acting on the Defendant's behalf.

4. To dismiss the Plaintiff's Summons and Complaint.

5. To made determinations of all taxable matters and compel the release of all documents.

6. To strike the defective deed conveying the subject property to the Plaintiff, and to Order that ownership of the subject property be returned to the Defendant; or in the alternate, Order foreclosure.

7. To Order that the Defendant receive compensation for damages.

8. For other relief that is just and proper.

9. That the Plaintiff bear the costs of this action.

---

The Defendant hereby affirms that these statements are true, except for those stated upon information and belief, and for those she believes them to be true.

_____          3-4-20
Elizabeth Tallant, Defendant, pro se        Date

Address:
    Elizabeth Tallant, 799
    Address Confidentiality Program
    9099 Mail Service Center
    Raleigh, NC 27699

Email: Protected by NC Address Confidentiality Program (acp@ncdoj.gov)
Phone: Protected by NC Address Confidentiality Program (919-716-6785)