IN THE UNITED STATES DISTRICT COURT
WESTERN DIVISION OF NORTH CAROLINA

Case Number: 5:20-CV-029

Patricia Richard,
           Plaintiff
                  Versus
Elizabeth Tallant,
           Defendant

---

## DEFENDANT'S COUNTERCLAIM (AMENDED)

---

Now here comes the Defendant, pro se, and pursuant to the Federal Rules of Civil Procedure (Rule 13 and Rule 16), 14 USC 1983 (Civil Action for Deprivation of Rights), 18 USC 1028 (Identity Theft), 12 USC Chapter 35 (Financial Privacy), 42 USC 1320d (HIPPA), 18 USC 241 (Conspiracy against Rights), 42 USC 1985 (Civil Conspiracy), Internal Revenue Code 34.1.1, 26 USC 7206, 26 CFR 1.121, 26 CFR 15a.453-1, 26 CFR 1.1012-1, 26 USC 7872; NCGS Chapter 22, Article 19, and Chapter 15C; and other statutes referenced herein, hereby respectually submits this amended Counterclaim and respectively moves this Honorable Court to order the Plaintiff to stop conducting business in the Defendant's name; to order an investigation of the identity theft and frauds the Plaintiff has committed against the Defendant; to order the Plaintiff to compensate the Defendant for damages; to dismiss the Plaintiff's Summons and Complaint; to determine all federal taxable matters and compel the release of all tax documents; to strike the deed conveying the Defendant's former home to the Plaintiff; and for other relief; and in support shows the following:

1. The Defendant filed her original counterclaim on March 4, 2020. In the "Defendant's Counterclaim (Amended)", the Defendant has provided additional information to clarify her claims, cited specific statutes that she previosly referenced, and updated information. It is in the interest of justice for the Defendant to amend her counterclaim.

2. On April 1, 2020, the Honorable Judge David C. Keesler issued the "Order" granting the Defendant an extension until May 1, 2020 to answer the Plaintiff's "Motion to Dismiss and Motion to Remand." The Defendant had not previously been served with these motions and accompanying memorandum, so the Court served the documents by mail. They were received by the North Carolina Attorney General's Address Confidentiality Program, who forwarded them to Defendant, and the Defendant received them on April 10, 2020. The Address Confidentiality Program has been experiencing delays due to procedural changes resulting from the COVID-19 crisis. Therefore, this admendment is timely filed.

3. The Defendant has amended her "Notice of Removal to the United States District Court of Western North Carolina", and hereby incorporates all her claims in the amended notice of removal

1

in this Counterclaim.

4. The Federal Rules of Civil Proceduree, Rule 13 states: *"(a) COMPULSORY COUNTERCLAIM. (1) In General. A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim;"* The Defendant has numerous claims arising out of the Plaintiff's claims in her "Complaint and Motion for Declaratory Judgment". Therefore, in these matters, a counterclaim is compulsory. A summary of the claims and corresponding counterclaims is as follows:

5. Counterclaims About Identity Theft and other Frauds

i)      Plaintiff's Claim:  In the Plaintiff's declaratory motion, line items nine (9) and ten (10), the Plaintiff claims that she has been conducting business in the Defendant's name. She conducted business that she deemed to be "on behalf" and "for the benefit" of the Defendant, as "... **requested by Plaintiff**", thereby stating that it was the Plaintiff, not the Defendant, who made purchases and created liabilities in the Defendant's name.

ii)      The Plaintiff is asking the court to declare that she authority to conduct business in the Defendant's name, obtain the Defendant's lawfully protected financial and medical information, and create liabilities in the Defendant's name, including federal tax liabilities. In line items nine (9) and ten (10) of the declaratory motion, the Plaintiff states a "sum total" of what she claims is a total monetary amount of business she conducted in the Defendant's name. The Plaintiff does list any of the transactions, contracts, agreement, etc. comprising the "sum total", and asks the state court to blindly declare as valid all the transactions, contracts, and agreements comprising the "sum total', but fails to specify or name any of the transactions. She asks the court to declare that the "sum total" is barter against the deed of trust the Plaintiff owes to the Defendant.

iii)      Defendant's Counterclaims: The Plaintiff fruadulently conducted business in the Defendant's name in the course of committing identity theft and other frauds against the Defendant. The Plaintiff then "raced to the courthouse" before investigations and discovery into the frauds could be completed, and filed a motion asking a state court to declare that she has authority to conduct business in the Defendant's name, as an anticipatory defense to criminal prosecution and civil lawsuits in Federal Court.

iv)      The Statute of Frauds, HIPPA, and numerous federal and state statutes, require that authorization to conduct business in another person's name, and authorization to obtain protected information, be in writing, and that any agreement pertaining to the sale of real property be in writing. The Plaintiff never had any authority, neither expressed nor implied, neither written nor verbal, to conduct business in the Defendant's name, and conducted said business fraudulently in the course of committing identity theft and other frauds against the Defendant. By this, she stole she Defendant's real and personal property, created liabilities in the Defendant's name, and obtained the Defendant's protected information, all in violation of 18 USC 1028 (Identity Theft), 12 USC Chapter 35 (Financial Privacy), 42 USC 1320-d(6) (HIPPA), 26 USC 7206 (Tax Fraud) and other federal and state statutes. The Plaintiff has inflicted upon the Defendant severe financial damages, defamation, and severe emotional pain and suffering. Pursuant to 14 USC 1983, and the other aforementioined statutes, the Defendant is entitled to civil damages and other relief, including return of her properties, monetary compensation, the repair of her credit, and a proper investigation to discover what all the the Plaintiff has done in the course of committing this identity theft. The Defendant petitions the Court for this relief. The Defendant does not yet know

2

the full extent of this identity theft. The Defendant states the frauds she knows or suspects in the section "Specific Incidents of Identity Theft and Other Frauds".

v)     Pursuant to 18 USC 1028, the United States Department of Justice defines identity theft as:
        *"Identity theft and identity fraud are terms used to refer to all types of crime in which someone wrongfully obtains and uses another person's personal data in some way that involves fraud or deception, typically for economic gain."* Source: https://www.justice.gov/criminal-fraud/identity-theft/identity-theft-and-identity-fraud.

        In this matter, the Defendant is the injured party, and is the natural plaintiff. The Plaintiff filed her declaratory motion as a "pre-emtive strike" to ask the state court to declare that she has authority to conduct business in the Defendant's name, before investigations of identity theft could be completed.

vi)     Federal Court case law precedent looks most unfavorably upon such abuses of declaratory motions, and has ruled that the injured party against whom the declaratory motion is filed in state court, is in fact the natural plaintiff. The Federal Courts have ruled that motions for declaratory relief, such as the Plaintiff's, were filed as a "pre-emtive strike" to deprive the natural plaintiffs of their choice of court forum, and dismissed the motions for declaratory relief. (References cited: Institute for Studies Abroad Inc. v. Int'l Studies Abroad Inc., 263 F.Supp.2d 1154 (S.D. Ind. 2001). Such a use of the Federal Declaratory Judgment Act "provokes a disorderly race to the courthouse." State Farm Fire and Casualty Co. v. Taylor, 118 F.R.D 426, 429-30 (M.D.N.C. 1988); see also Fireman's Ins. Co. of Newark v. Riley, 322 F.Supp. 349, 351 (W.D. Ky. 1971)).

Specific Incidents of Identity Theft and Other Frauds
6.  The Plaintiff is a professional real estate investor with around seven million dollars ($7,000,000) in holdings. She is also/has been a licensed real estate agent.

7.  In October 2019, the Defendant received a letter from the Plaintiff claiming that the Defendant is liable for maintenance fees on the Plaintiff's time share in Myrtle Beach, South Carolina, because the Plaintiff added the Defendant's name to the Plaintiff's time share deed. This was done without the Defendant's knowledge or consent.

8.  In September 2018, the Plaintiff sold the timber off a parcel of land in Iredell County, NC belonging to the Defendant, and personally received the monies, without the Defendant's knowledge or consent. The Defendant recently discovered the deed, and made inquiry from the timber company, who stated that they executed the deed because the Plaintiff represented that she had the Defendant's agent authority, and was authorized to sell the timber and receive the proceeds.

9.  The Defendant's sibling, Richard Tallant, publicized the Defendant's lawfully protected address. The Plaintiff gave him the address.

10.i.)   The Defendant's father was "WT", and the Defendant is his heir. The Defendant has good cause to believe that the Plaintiff committed identity theft against her in matters pertaining to WT's estate. The Defendant learned that the Plaintiff conducted highly questionable transactions in WT's estate without the consent of the will, without the consent of the Clerk of Court, and without the knowledge or consent of the Defendant. The Defendant never received a distribution from WT's estate.

3

ii)     The  Plaintiff exercised influence over WT's estate executor, "AG", who was WT's wife, and then conducted business in WT's estate. The Defendant recently discovered that the estate accounting is materially incorrect, and personal property (including firearms) has been stolen out of the estate. Discovery and a criminal investigation are currently underway.

iii)     WT's estate was closed in October 2013, however there has been estate activity since then. In June 2017, the Plaintiff got an attorney to file a deed of trust satisfaction for a forty thousand dollar ($40,000) debt she owes to WT's estate. The attorney filed the satisfaction without proof that the Plaintiff paid the dbt, and the Plaintiff refuses to provide proof of payment.

iv)     The Defendant also learned that the Plaintiff obtained a deed to WT's home, paying a mere thirty-three thousand dollars ($33,000) for the two hundred thousand dollar ($200,000) property. The conveyance is unlawful. The estate file reflects that the home's mortgage, owed to Vanderbilt Mortgage of Tennessee, is still owed. On January 3, 2020, the Catawba County, NC Clerk of Court signed a subpoena on behalf of the Defendant to obtain information about WT's mortgage from Vanderbilt Mortgage of Tennessee. Vanderbilt responded that they would not provide financial data because the subpoena was not issued in accordance with the Uniform Depositions and Discovery Act, but their response was sufficient to indicate that the mortgage was not paid off at the time the Plaintiff obtained the deed to WT's home, and that the mortgage may still be owed. Vanderbilt's letter is dated January 10, 2020. The Plaintiff filed her motion for declaratory judgment on January 27, 2020.

11. The Plaintiff, by fraudulenlty representing that she had the Defendant's consent, obtained a deed for real properties to which the Defendant inherited the right of first refusal. In May 2019, the Plaintiff filed a "pre-emtive strike" partition lawsuit against the Defendant, Catawba County 19 SP 216, in which she asks the court to declare that she is the rightful owner of these real properties. The matter is still pending, and cannot lawfully be heard until the court establishes what debts are owed by WT's estate. This is why the Clerk of Court signed the subpoena to Vanderbilt Mortgage of Tennessee.

12. The Defendant has good cause to believe that the Plaintiff committed fraud against WT's estate, against Vanderbilt Mortgage of Tennessee, and against the Defendant in the matters relating to this mortgage. Vanderbilt's letter responding to a subpoena immediately precipitated the Plaintiff's filing of the declaratory motion against the Defendant.

13. The Defendant has good cause to be concerned that WT's estate still owes federal income taxes and other debts.

14. The Plaintiff and Richard Tallant jointly owe a seventy thousand dollar ($70,000) deed of trust to the estate of the Defendant's late aunt, PH. The Defendant is her heir. The Plaintiff has refused to provide any proof of payment for this debt. Richard Tallant is the estate administrator. The Defendant has good cause to believe that the Plaintiff has committed fraud against the Defendant in matters pertaining to PH's estate. The Defendant is trying to conduct discovery.

<u>15. Counterclaims to the Plaintiff's Fraudulent Claims about Taxable Income</u>
i)     <u>Plaintiff's Claim Pertaining to Taxable Matters:</u>  In line items nine (9) and ten (10) of the Plaintiff's declaratory motion, the Plaintiff states a "sum total" of what she claims is a total amount of business she has conducted in the Defendant's name. The Plaintiff does list any of the transactions, contracts, agreement, etc. comprising the "sum total", and asks the state court to

4

blindly declare as valid all the transactions, contracts, and agreements comprising the "sum total", but fails to specify any of the transactions. She asks the court to declare that this "sum total" is barter against the deed of trust the Plaintiff owes to the Defendant. Barter and installment sale income are taxable under the Internal Revenue Laws of the United States, pursuant to numerous statutes including 26 USC 6045 and 26 CFR 15a.453-1, respectively. Therefore, the Plantiff is asking the court to declare that she has authority to create federal tax liabilites for the Defendant.

ii)    <u>Plaintiff's Counterclaim Pertaining to Taxable Matters:</u> The Plaintiff's false claims about taxable matters are an attempt to fraudulently create tax liabilities in the Defendant's name, to cause the Defendant to owe taxes she does not rightfully owe, and to allow the Plaintiff to claim tax deductions to which she is not lawfully entititled. The Plaintiff has never had any authority to conduct business in the Defendant's name, or create liabilites for the Defendant. When identity theft has tax consequences, it is tax-related identity theft and presents numerous federal questions, purusant to 18 USC 1028 (Identity Theft), 12 USC Chapter 35 (Financial Privacy), 26 USC 7206, and other statutes. These statutes and 14 USC 1983 allow the Defendant to sue for damages caused by this tax-related identity theft. The Defendant petition the court for relief.

iii)    Further, Internal Revenue Codes including 26 USC 6045 requires barter participants to provide detailed documentation about each barter transaction to the parties with whom they barter. 26 USC 7872(d)(1) requires that individuals claiming receipt of an interest free loan provide a statement of their net investment income to the other party. The Plaintiff has refused to provide the Defendant with this documentation, and the Defendant requests that the Court compel the Plaintiff to provide this information.

16. The Plaintiff, a professional real estate investor, purchased the Defendant's former home in January 2018. The agreement is for a selling price of $85,000, with a $25,000 cash down payment, and a $60,000 Deed of Trust and promissory note with payments to be made at the rate of $500 per month in cash, and interest at the annual rate of 3.5%. The Plaintiff paid the Defendant less than $7,000 towards the down payment, has paid nothing on the Deed of Trust/Promissory Note, and is in default.

17. The Plaintiff is asking the court to declare that the "sum total" of the transactions in her declaratory motion line items nine (9) and ten (10), be used as barter against a deed of trust she owes for the purchase of the Defendant's home. The Plaintiff fraudulenlty claims the Defendant gave her an interest free loan, and that the Plaintiff has made the down payment (which she did not make), for a sum total of over ($70,000) that the Plaintiff never paid, but for which she demands credit. These matters are taxable under the Internal Revenue Laws of the United States.

    A.Monies received from the sale of a home are taxable pursuant to 26 CFR 1.121.

    B.Installment sale income is taxable purusuant to 26 CFR 15a.453-1.

    C. An investor's taxable basis for a home is governed by 26 CFR 1.1012-1.

    D.Interest free loans are taxable pursuant to 26 USC 7872.

    E. 26 USC 7872(d)(1) requires that anyone claiming to receive an interest free loan must provide a statment about their investment income to the other party. The Plaintiff has refused to provide the Defendant with said statement.

    F. Numerous tax codes govern barter, with different requirements for businesses and individuals, but codes are clear that all barter is taxable. IRS publication 525 states on page 20, *"Bartering is an exchange of property or services. You must include in your income, at the time received, the FMV of property or services you received in bartering."*

    G. The Plaintiff refuses to provide the Defendant with a list of the purported barter "sum

total" transactions from lines nine (9) and ten (10) of the declaratory motion. Internal Revenue Codes including 26 USC 6045 require barter participants to provide detailed documentation about each barter transaction to the parties with whom they barter.

<u>Defendant's Counterclaims of Civil and Criminal Conspiracy:</u>
18. The Plaintiff and Richard Tallant are participants in a civil and criminal conspiracy against the Defendant, to deprive her of funds so that she cannot afford an attorney, and to coerce her into signing over her properties for little or no compensation. They have defaulted on debts they owe the Defendant, committed frauds against the Defendant, and harassed the Defendant. The Plaintiff has committed identity theft against the Defendant, and filed two lawsuits against her in a "race to the courthouse." As a result of this civil and criminal conspiracy, the Defendant has suffered severe monetary damages, been deprived of her properties, suffered defamation, suffered severe violations of her civil rights, had emotional pain and suffering, and is unable to afford counsel. This is in violation of 18 USC 241 and 42 USC 1985.

19. The Plaintiff and Richard Tallant have have another lawsuit against the Defendant, and have retained several attorneys to represent them.

20. The Defendant is not an attorney, and therefore cannot provide effective counsel for herself. Because of the Plaintiff's civil and criminal conspiracy, the Defendant cannot afford an attorney. It is against the interests of justice for the Defendant to be without effective counsel.

21. The Defendant seeks the Court's assistance in obtaining counsel. If the the court is unable to appoint counsel, the Defendant seeks additional time to try to obtain counsel, and requests that in the meantime, the court order investigations to determine the extent of the identity frauds the Plaintiff has committed against the Defendant, so that the investigation will not be delayed.

22. The Defendant is making a good faith effort to obtain pro bono and reduced cost legal services, and other assistance, and is being hindered by the COVID-19 crisis.

23. Claims regarding the Defendant's former home and the deed of trust the Plaintiff owes the Defendant are fuerther explained in the following "Events" section:

<u>Events:</u>
24. In December 2017, the Defendant and the Plaintiff made an agreement for the Plaintiff to purchase the Defendant's former home. The agreement was made in Cleveland County, NC.

25. The agreement was for a purchase price of eighty-five thousand dollars ($85,000), a down payment of twenty-five thousand dollars ($25,000) in cash, and the remainder paid with a sixty-thousand dollar ($60,000) Deed of Trust/Promissory Note with monthly payments of five hundred dollars ($500) cash, including interest at an annual rate of three and one half percent (3.5%). The agreement was for all payments to be made in cash to the Defendant. (See "Defendant's Exhibit C", "Deed", with a revenue stamp of one hundred seventy dollars ($170) relfecting a purchase price of eighty-five thousand dollars ($85,000)).

26. Attorney Alan Carpenter conducted the sale, prepared the Deed of Trust, Promissory Note, and Amortization Schedule. He is the Trustee for the Deed of Trust. Alan Carpenter first

6

represented the Defendant in the purchase of a home in 2000. A few year later, the Plaintiff became his client. The Defendant and the Plaintiff are relatives.

27. Alan Carpenter sent the deed to the Defendant to be signed, and the Defendant signed it in Cleveland County and mailed it back to Alan Carpenter, who was to collect the down payment and file the Deed of Trust; but something else happened instead. The Plaintiff went to Alan Carpenter's office and told him that she had paid the twenty-five thousand dollars ($25,000) down payment directly to the Defendant, when in fact she had not paid the Defendant at all. Alan Carpenter took the Plaintiff's word and gave her the signed deed without verifying that she paid the Defendant. Further, Alan Carpenter did not file the Deed of Trust. Upon information and belief, the Plaintiff told Alan Carpenter that she would file the Deed of Trust, and he took her word that she would. The Defendant later learned that the Deed of Trust had not been filed, and she immediately filed it.

28. The Plaintiff paid the Defendant less than seven thousand dollars ($7,000) on the down payment, and paid nothing on the Deed of Trust; therefore, the Defendant refused to give the home's keys and security code to the Plaintiff, and repeatedly asked the Plaintiff to either pay her or deed the house back to her. The Plaintiff repeatedly told the Defendant that she would deed the house back to the Defendant, but never did so.

29. The Plaintiff did agree, and signed an agreement, that she would not occupy the home, nor enter it unless the Defendant was present; that she would allow the Defendant to store personal items in the home, and allow the Defendant full access to the home; until such time as the down payment was fully paid and the Deed of Trust payments were current, or for the next eighteen months, whichever was later. The Plaintiff agreed to be responsible for the home's upkeep and maintenance. The Defendant did not bring legal action because the matter involves family, and was hopeful that the matter would be resolved without litigation.

30. The Plaintiff is the Defendant's birth mother. The Plaintiff is seventy-seven (77) years old. The Defendant is fifty-two (52) years old.

31. The Plaintiff is a professional real estate investor and landlord, and a former real estate agent. She has holdings valued at around seven million dollars ($7,000,000) in Catawba, Iredell, Lincoln, Rowan, and Alexander Counties.

32. The Plaintiff has a history of making unreasonable and unjustified demands upon the Defendant for money to finanace the Plaintiff's real estate purchases, and for free labor and other services for the Plaintiff's rental business.

33. The Plaintiff and the Defendant's father were previously married. They separated in 1981 and had a bitter divorce. Both of them remarried. The Plaintiff divorced again, but the Defendant's father stayed married to his second wife until his passing in 2012. The Plaintiff had an extremely acrimonious relationship with the Defendant's father and Defendant's father's family.

34. In May 2018, the Defendant's paternal aunt (Mrs. Peggy Tallant Hare) passed away at the age of 89. A dispute arose between the Plaintiff and members of the Defendant's father's family over monies the Plaintiff owes to Mrs. Hare's estate. Prior to Ms. Hare's pasing, the Plaintiff and Defendant's sibling (Richard Tallant) purchased Mrs. Hare's home for less than half its value with

a seventy thousand dollar ($70,000) deed of trust still owed at the time of Ms. Hare's passing. Alan Carpenter prepared the Deed and Deed of Trust. The Plaintiff and Richard Tallant stated that they refused to pay the monies they owed Mrs. Hare's estate.

35. The Defendant also learned that the Plaintiff had falsely purported to members of the Defendant's father's family that she was acting on the Defendant's behalf and had the Defendant's authorization to obtain certain properties for which the Defendant has the right of first refusal. The Defendant never gave consent. Alan Carpenter prepared the deed conveying the properties from the family members to the Plaintiff. Upon learing this, the Defendant was uncoverinig the "tip of the iceberg" of identity theft.

36. The Defendant and Defendant's father's family members disputed the Plaintiff and Richard Tallant's misrepresentations and refusal to pay debts they owe to Mrs. Hare's estate. The Plaintiff and Richard Tallant made threats to the harm the Defendant and family members.

37. The Plaintiff and Richard Tallant then committed civil conspiracy against the Defendant by defaulting on debts they owe to the Defendnat, by using unlawful tactics to "tie up" all the Defendant's assets, and by bringing litigation against the Defendant (Catawba County 19 SP 216).

38. In Catawba County 19 SP 216, the Plaintiff is suing the Defendant for attorney fees and real estate taxes. In the Plaintiff's declaratory motion in 5:20 CV 029, line items nine (9) and ten (10), the Plantiff is claiming that attorney fees and real estate taxes are barter on the deed of trust. Therefore, the Plaintiff is asking for the same monies in both lawsuits, thereby "double charging."

39. The Deed of Trust states that the Trustee initiates foreclosure action. The Defendent asked Alan Carpenter to initiate foreclosure on the subject home. Alan Carpenter stated that he was in a conflict of interest position, and because other deeds he prepared for the Plaintiff were being litigated, he could no longer represent either the Defendant or the Plaintiff.

40. The Plaintiff failed to maintain the subject home's 1.63 acre yard, and allowed the yard to become so overgrown in kudzu that it has grown up on the home's roof and porch, and overtaken a car parked in the yard. The Plaintiff did not maintain the home's exterior well, and the pipes burst in the winter of 2018, leaving the home without water. The damages caused by the Plaintiff's negligence are in the many thousands of dollars and have a substantial impact on the home's value.

41. The Defendant never provided the Plaintiff with a key nor security code.

42. The Defendant has paid all the home's electric bills and security monitoring fees since the sale in January 2018, and the utilities are still in the Defendant's name. The Plaintiff has not paid for any of the home's utilities.

43. The Defendant and Defendant's children left personal possessions inside the home and storage buildings, but have not retrieved said items because of the barriers created by the kudzu, and have not recently been to the home out of concerns of confrontation with the Plaintiff if they were to go on the property. Upon information and belief, the Defendant and her children's personal items are still in the home.

## Concluding Statements

44. Pursuant to 14 USC 1983, the Defendant is entititled to bring civil action for the deprivation of her rights afforded by the Constitution and Laws of the United States.

45. The Plaintiff has stolen the Defendant's identity and used it to fraudulenlty conduct business in the Defendant's name. Through identity theft and other frauds, the Plaintiff has stolen the Defendant's real and personal properties, created liabilites in the Defendant's name, and obtained the Defendant's lawfully protected financial and medical information, in violation of 18 USC 1028, 12 USC Chapter 35, 42 USC 1320-d(6), and other federal and state statutes. The Defendant has suffered injury from the Plaintiff's theft of the Defendan't identity.

46. The Defendant does not yet know the extent of the identity theft and other frauds the Plaintiff has committed against her, and the matters are still in the investigative and discovery stages.

47. In a "race to the Courthouse", the Plaintiff filed the motion for declaratory judgment, asking the state court to declare that the Plaintiff has authority to conduct a wide variety of business in the Defendant's name. The Plaintiff filed this motion as an anticipatory defense to criminal and civil liablity in Federal Court. The Federal Court precedent looks most unfavorably upon such abuses of declaratory motions (References cited: Institute for Studies Abroad Inc. v. Int'l Studies Abroad Inc., 263 F.Supp.2d 1154 (S.D. Ind. 2001). Such a use of the Federal Declaratory Judgment Act "provokes a disorderly race to the courthouse." State Farm Fire and Casualty Co. v. Taylor, 118 F.R.D 426, 429-30 (M.D.N.C. 1988); see also Fireman's Ins. Co. of Newark v. Riley, 322 F.Supp. 349, 351 (W.D. Ky. 1971)).

48. The Plaintiff has made false claims about income that is taxable under the Internal Revenue Code, and is attempting to get the court to declare that she has the authority to create tax liabilities in the Defendant's name, for taxes the Defendant does not lawfully owe. The identity theft the Plaintiff committed against the Defendant is tax related identity theft, in violation of 18 USC 1028, 26 USC 7872, the Defendant's civil rights, and other federal and state statutes.

49. The Plantiff is a participant in a civil and criminal conspiracy against the Defendant, to deprive her of funds so that she cannot afford an attorney, and to try to coerce her into signing over her properties. This is in violation of 18 USC 241 and 42 USC 1985.

50. The Defendant is not an attorney and cannot provide her own effective counsel. The Plaintiff has an attorney, and has effective counself. It is against the interests of justice for this matter to continue without the Defendant having effective counsel.

51. .The Defendant has the need, and the lawful right, to know what agreements and transactions the Plaintiff has conducted in her name and while purporting to act on her behalf.

52. The deed conveyance of the Defendant's home to the Plaintiff was not lawful nor proper since the attorney/trustee released the signed deed to the Plaintiff without collecting the down payment, and the down payment was never made. The Plaintiff has had over two (2) years to cure this matter, but has refused, and instead has made false claims about payments to the Defendant. The deed is defective.

53. The Deed of Trust, Promissory Note, and Amortization Schedule make clear that all payments for the subject property were to be in cash paid to the Defendant, and that the Plaintiff agreed to pay interest on the loan. No other agreement ever existed. NCGS Chapter 22 states that all agreements pertainig to the sale of real estate must be in writing.

54. The aforementioined matters involve numerous federal questions, that require the Court to interpret numerous aforementnioned federal laws.

55. The Defendant reserves the right to further amend this Counterclaim.

---

WHEREFORE, the Defendant petitions this Honorable Court for the following:

1. To Order the Plaintiff to immediately cease from conducting business in the Defendant's name, and cease from conducting business under the guise that she is acting on the Defendant's behalf.

2. To Order an investigation to find out all transactions, agreements, etc. that the Plaintiff has conducted in the Defendant's name, and while purporting to act on the Defendant's behalf.

3. To appoint counsel to the Defendant, or if the Court cannot appoint counsel, allow the Defendant additional time to obtain counsel before proceeding with this matter. The Defendant requests that in the interim, the Court order and investigation into the matters of identity theft, so that said investigation will not be delayed.

4. To declare as null and void all agreements that the Plaintiff has made in the Defendant's name, and all debts the Plantiff has created in the Defendant's name.

5. To dismiss the Plaintiff's Summons and Complaint.

6. To made determinations of all taxable matters and compel the release of all tax documents.

7. To strike the defective deed conveying the subject property to the Plaintiff, and to Order that ownership of the subject property be returned to the Defendant; or in the alternate, Order foreclosure.

8. To Order that the Defendant receive compensation for damages.

9. For other relief that is just and proper.

10. That the Plaintiff bear the costs of this action.

---

The Defendant hereby affirms that these statements are true, except for those stated upon information and belief, and for those she believes them to be true.

_Elizabeth Tallant_         5-1-20
Elizabeth Tallant, Defendant, pro se       Date

10

Address:

Elizabeth Tallant, 799
Address Confidentiality Program
9099 Mail Service Center
Raleigh, NC 27699

Email: Protected by NC Address Confidentiality Program (acp@ncdoj.gov)
Phone: Protected by NC Address Confidentiality Program (919-716-6785)